IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | § | Case No. 06-43133-705 |
| | § | |
| JEFFREY DELUNAS and | § | Chapter 7 |
| LAURIE SUE DELUNAS, | § | |
| | § | [Related to Docket #31] |
| Debtors. | § | [UNPUBLISHED] |

## ORDER GRANTING MOTION TO DISMISS

On December 7, 2006, the United States Trustee (the "UST") filed a Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(2) (the "Motion") [Docket #31] in the above-referenced bankruptcy case (the "Case"). On December 29, 2006, the Debtors filed an objection to the Motion in the form of a Response to the Motion [Docket #34]. The matter came before the Court for hearing on February 14, 2007. For the reasons given below, the Court finds in favor of the UST.

## FACTS

The UST seeks dismissal under § 707(b)(2) of title 11 of the United States Code (the "Bankruptcy Code"), arguing that the Debtors have sufficient disposable monthly income, as calculated on the Debtors' Amended Official Form B22A ("Form B22A") [Docket #16],[1]

---

[1] An Official Form B22A is required to be filed by a chapter 7 debtor with primarily consumer debts. It provides a calculation of current monthly income and the means test calculation for purposes of determining whether the presumption of abuse arises. At Line 51 of the form, the debtor must calculate his "disposable income under § 707(b)(2)." Although § 707(b)(2) does not use the specific term "disposable income," it provides for the calculation of such for purposes of the means test. "Disposal income" is the debtor's current monthly income reduced by the amounts determined under § 707(b)(2)(ii),(iii), and (iv), and multiplied by 60. The presumption of abuse arises if the debtor's disposable income "is not less than the lesser of–(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6000, whichever is greater; or (II) $10,000." 11 U.S.C. § 707(b)(2)(A)(i). This is the so-called "means test."

to raise the presumption that proceeding in chapter 7 constitutes abuse and dismissal is required. The Debtors concede that the statutory presumption of abuse has arisen.[2] The parties agree that the only issue is whether the Debtors have rebutted the presumption and that it is the Debtors' burden to establish that the presumption has been rebutted.

The Debtors argue that the presumption is rebutted because "special circumstances," as described under § 707(b)(2)(B), exist to rebut the presumption. Specifically, the Debtors assert that their special circumstance is the need to spend, for their younger children's educational welfare, an additional $813 a month more in housing expenses than the allowable deduction for housing under § 707(b)(2).[3] They claim that this additional $813 is necessary to allow the family to live in an area with bussing to the schools at which the children have long been enrolled. They argue that continued enrollment in these schools is in the children's educational welfare, and that the children's educational welfare constitutes a § 707(b)(2) special circumstance.

---

[2]Form B22A at 1. At Line 51, the Debtors calculate that their 60-month disposable income is $43,939.80. As such, the Debtors fail the means test and the presumption arises under § 707(b)(2)(A)(i).

[3]The $43,939.80 figure for the Debtors' disposal income at Line 51 on Form B22A includes a deduction taken at Line 20B for housing, as allowed under § 707(b)(2)(A)(ii), in the amount of $1012 a month. This is the local housing and utility standardized amount for the housing deduction as provided by the Internal Revenue Service Housing and Utilities Standard (the "IRS Standard"). Section § 707(b)(2)(A)(ii) requires that the IRS Standard, not a debtor's actual housing costs, be used. *See also In re Skaggs*, 349 B.R. 594, 598 (Bankr. E.D. Mo. 2006) (holding that the IRS Standard was the appropriate Line 20B deduction). The Debtors actually spend $1825 a month in rent–$813 a month more than the IRS Standard. The Debtors list this additional $813 at Line 56, where a debtor may list "Other Expenses." However, amounts listed at Line 56 are not included in the calculation of disposable income. *See In re Demonica*, 345 B.R. 895, 903 (Bankr. N.D Ill. 2006) (holding that a debtor "cannot deduct the additional expenses [for housing above the IRS Standard] pursuant to the Other Expense Category").

**LAW**

Section 707(b) provides that "[a]fter notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Section 707(b)(2)(A)(i) provides that abuse is presumed if the debtor's current monthly income (defined in 11 U.S.C. § 101(10A)), reduced by certain amounts set forth in § 707(b)(2)(A)(ii-iv), and multiplied by 60, exceeds the statutory ceiling set forth in § 707(b)(2)(A)(i)(I-II). A chapter 7 debtor must provide this calculation on Official Form B22A, which is filed in the case and includes a box where the debtor indicates whether the presumption of abuse has arisen. Section 707(b)(2)(B) provides that the presumption may be rebutted "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."[4]

"Special circumstances"[5] does not include a "desire to remain living wherever [the

---

[4] There appears to be a superfluous word–"that," located between "circumstances" and "justify"–in § 707(b)(2)(B). The Court suspects that Congress meant either not to include the word or, alternatively, to place it between the preceding words "extent" and "such." However, despite this minor error of syntax, the plain meaning of the statute is clear and the presence of this word has no bearing on the issue in this Case.

[5] The Debtors assert that 11 U.S.C. § 523(d) is instructive as to the meaning of the phrase "special circumstances" in § 707(b)(2) because § 523(d) also includes the phrase. Section 523(d) provides that "the court shall grant judgment in favor of the debtor [on the issue of the determination of dischargeability] for the costs of . . . the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust." The Debtors argue that § 523(d)

debtors] choose," *In re Tranmer*, 355 B.R. 234, 251 (Bankr. D. Mont. 2006), but should "rise to the same level as [the statutorily recognized examples of] a serious medical condition or a call to active duty." *In re Johns*, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006). In general, "special circumstances" are "circumstances beyond a debtor's reasonable control, such as [the examples given in § 707(b)(2)(B)(i)].'" *In re Tranmer*, 355 B.R. at 251; *see In re Tuss*, 2007 WL 442051, at *15 (Bankr. D. Mont. Jan. 5, 2007).

## DISCUSSION

Central to the Debtors' argument is their belief that it is necessary for their family of five[6] to reside in a 4-bedroom home in an affluent St. Louis suburb while the Debtors receive chapter 7 relief. Implicit in the Debtors' Response and in their argument at the hearing is the misplaced belief that a 4-bedroom home is the base line for acceptable living space for the family. No reason, other than the desire to provide each child with his or her own room, was offered for requiring a 4-bedroom house. Although it may be ideal to provide each child with his or her own room, the Debtors are not entitled to this optimal spaciousness at the expense of their creditors. To avoid the need to justify their unfounded presumption of entitlement to a 4-bedroom house, the Debtors characterize the additional $813 a month expenditure as one necessary for their children's educational welfare.

---

demonstrates that the phrase "special circumstances" requires consideration of what is just and equitable. However, even if this argument is correct, it would not indicate that the Debtors have established special circumstances. As discussed below, there is nothing just and equitable in allowing the Debtors to benefit from the protections and discharge of chapter 7 while paying more for housing than the law recognizes as reasonable and necessary, simply to allow the Debtors extra comfort.

[6]The Debtors' two school-aged children–a girl, aged 13, and a boy, aged 15–live at home, as does a 19-year-old daughter.

The Debtors are not, in fact, spending the additional $813 a month to keep their children in their current schools. They are spending it so that each child may have his or her own bedroom in a house in the desired school area. There is no evidence to establish that complying with the IRS Standard completely "prices out" the Debtors from living in the area where their children would receive free bussing to their current schools. Rather, the Debtors are priced out from living in that area in a house with the amount of space and accommodations they prefer. This preference has no bearing on the children's education, but only on the Debtors' accustomed lifestyle and convenience. Accordingly, the Court need not opine on the issue of whether a child's continued matriculation at and bussing to a school may constitute a § 707(b)(2) special circumstance, as the facts clearly demonstrate that the additional $813 a month would not be incurred for education costs, but for the comfort of a home with plentiful bedrooms.[7]

In addition, the Debtors appeared to argue at the hearing that their younger daughter's depression is a § 707(b)(2) special circumstance requiring the Debtors to spend

---

[7]Even if the additional $813 a month in rent could be characterized as an expenditure for educational welfare, the Debtors' argument that this expenditure is a § 707(b)(2) special circumstance is undermined by the statute itself. Section § 707(b)(2)(A)(ii)(IV) allows a debtor to deduct up to $1500 a year ($125 a month) per dependent child for education expenses (taken at Line 38 on Official Form B22A). As such, the educational welfare of a dependent child is not a "special circumstance"; it is a statutorily specified circumstance subject to a monthly limit. The Debtors' listing of the additional $813 a month at Line 56 and characterizing it as one for "special circumstances" is an effort to avoid listing the expenditure at Line 38 where it is subject to the ceiling, which the Debtors exceed. This is not to opine that non-typical educational costs–such as expensive but necessary special education for a disabled child–cannot qualify as expenditures for "special circumstances," when incurred to meet a child's serious medical or developmental needs (a condition on par with a § 707(b)(2)(B) "serious medical condition") and are beyond the typical educational expenditures contemplated by § 707(b)(2)(A)(ii)(IV). However, the Debtors' children have no such needs.

Page 5 of 8

the additional $813 a month to remain in the house.[8]  Laurie Sue DeLunas testified that her younger daughter recently was diagnosed with depression and is receiving medical treatment for the condition.  The Court finds this testimony to be credible.  However, there is no evidence which establishes that this medical condition necessitates that the Debtors stay in the house with bedrooms for each child.  Although Mrs. DeLunas believes that a move would worsen her daughter's condition (presumably as a result of the upheaval of a relocation or a change in schools, if the Debtors were to move outside the current school area), the Court finds this testimony alone to be insufficient to establish that the daughter's depression is a § 707(b)(2) special circumstance.  Mrs. DeLunas is not a physician and has a self-interest in conjecturing on the possible effects of her daughter's depression, and there was no qualified medical evidence offered in support of her belief.

Finally, even if the Debtors had defeated the presumption of abuse, the Court would dismiss the Case for abuse.  Where the presumption of abuse does not arise or such presumption has been rebutted, the Court nonetheless may dismiss the case for abuse under § 707(b)(1) if it finds that the debtor filed the petition in bad faith or if the totality of the circumstances of the debtor's financial situation demonstrates abuse.  11 U.S.C. § 707(b)(3).  In this Case, the facts show that the totality of the circumstances of the Debtors' financial situation establishes abuse.  Principally, the Debtors insist on living in a 4-bedroom house to allow each child his or her own bedroom–including a bedroom for their adult daughter.  This daughter is over the age of majority and not enrolled in college or trade school.  And, despite the fact that the daughter is employed, the Debtors receive no

---

[8]This argument was not made in the Response.

household assistance from her. However, the Debtors provide her–and seek to continue to do so on the backs of their creditors–with a private room and boarding. In doing so, the Debtors include in their budget living expenses of this daughter, who is no longer their legal dependent.

The Court considers the living expenses of an adult child of the Debtor "as a part of the overall consideration of the reasonableness of the [d]ebtor['s] family living expenses." *In re Smith*, 269 B.R. 686, 690 (Bankr. W.D. Mo. 2001). In *Smith*, the debtors' 20-year-old daughter lived at home and attended college. As such, the debtors were "obligated, under Missouri law, to provide for her support until she reach[ed] the age of 22, if she [was] enrolled full-time in an institution of higher learning." *Id.* at 689. However, the *Smith* court determined that, even with this support obligation, the debtors "could reasonably be expected to reduce their living expenses significantly and thereby produce funds that could be used to fund a Chapter 13 plan," *id.* at 690, based on the court's review of the debtors' family living expenses.

The Court finds that in this Case, the Debtors also reasonably could be expected to reduce their living expenses, specifically those made for their adult daughter, and not to do so constitutes abuse of chapter 7. The Debtors' daughter is not enrolled in school and the Debtors have no legal obligation to continue to support her. To do so is a luxury, not a necessity, for the Debtors. This fact, compounded by the indulgence of providing the daughter with her own room while not receiving any contributions from her to the household, shows that the Debtors' current level of support for her is not reasonable in light of their financial circumstances and their obligations as chapter 7 debtors.

**CONCLUSION**

For the reasons stated, the Court **FINDS** in favor of the UST, **HOLDS** that the relief requested in the Motion is proper, **GRANTS** the Motion, and **ORDERS** that the Case be **DISMISSED**, and that all other pending matters be **DENIED** as moot.

DATED this March 6, 2007

St. Louis, Missouri

*Charles E. Rendlen, III*
Charles E. Rendlen, III
United States Bankruptcy Judge

Copies to:

Leonora S. Long
Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

E. Rebecca Case
Trustee
7733 Forsyth Blvd., Suite 500
Saint Louis, MO 63105

Jason Daniel Fauss
Attorney for Debtors
11965 St. Charles Rock Road, Suite 202
St. Louis, MO 63044

Gary D. Bollinger
Attorney for Debtors
Bankruptcy Center
3827 Gustine Ave.
Saint Louis, MO 63116